IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GREGORY S. MERCER,

        *Plaintiff*,

v.

E.A. VEGA,

        *Defendant*.

Case No. 1:18-cv-346

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment. Dkt. 19. For the following reasons the Motion is granted.

### I. Background

The present case was set in motion by a 2006 arrest. On June 9, 2006, Trooper Kenneth Houtz approached four cars that were pulled over on the shoulder of Interstate 66. The driver of one of these cars was Plaintiff, Gregory Mercer. As Houtz was issuing a summons to Mercer for improperly stopping on the highway, Mercer struck Houtz and called Houtz an asshole. Seeking to deescalate the situation, Houtz went to issue summonses to the three other drivers to give Mercer a chance to calm down. When Houtz returned to Mercer, Mercer was still upset and asked for Houtz's name and badge number.

Houtz then called his Division Headquarters and spoke to Sergeant Kerry Allander about the situation with Mercer. After speaking to Allander, Houtz arrested Mercer and subsequently obtained and served a warrant on Mercer for assault and battery of a law enforcement officer.

After his arrest, Mercer went to the Division VII, Area 9 Office to speak with Allander.

1

Mercer told Allander Houtz's story about what happened on the side of Interstate 66 was not true and that Mercer had been unjustly arrested. Allander informed Mercer he was not Houtz's supervisor and gave him the information for Houtz's supervisor.

On November 30, 2006, Mercer was convicted of misdemeanor assault and battery in Fairfax County General District Court. Mercer appealed to the Fairfax County Circuit Court, was convicted there as well and sentenced on June 1, 2007.

After his conviction, Mercer did not seek to put this incident behind him, but instead remained fixated on his allegedly unjust arrest. Soon after the conviction Mercer and Houtz spoke on the phone. Mercer accused Houtz of committing perjury, Houtz denied this accusation, and Mercer hung up the phone. Mercer then appealed his conviction to the Virginia Court of Appeals, the Supreme Court of Virginia, and the United States Supreme Court. All appeals were denied. Approximately a year and a half later, on January 4, 2011, Mercer filed complaints against all the judges involved in his case – the Circuit Court judge, the Court of Appeals judges, and the Supreme Court of Virginia justices – with the Judicial Inquiry and Review Commission of the Commonwealth of Virginia. The Commission informed Mercer it did not have the authority to address the complaints.

On March 3, 2015, over four years after he filed his judicial complaints, and nearly nine years after the 2006 arrest occurred, Mercer called the Division VII, Area 9 Office and asked to speak to Allander. When Mercer was unable to speak to Allander he asked for information on Allander and Houtz. After this phone call Mercer went to the Division VII, Area 9 Office in person, falsely identified himself as a George Mason University student, and spoke to Allander, asking him for further information about Houtz.

Three days later, on March 6, 2015, Mercer filed a lawsuit in this Court against Fairfax County Child Protective Services and two of its employees, the Fairfax County Department of

Code Compliance and three of its employees, Allander, Houtz, and all the judges and justices mentioned above.

After filing his lawsuit, Mercer began making efforts to serve Allander and Houtz. On March 11, 2015, Mercer called Division VII, stating he needed to serve subpoenas on Allander and Houtz. The person Mercer spoke to informed Mercer that he could serve Allander and Houtz at their work addresses. Two days after this phone call, Mercer emailed Allander and Houtz asking for their home addresses so he could serve them. Allander and Houtz forwarded the emails to their supervisors per department policy and the supervisors forwarded the emails to the Office of Legal Affairs.

Between March 16 and 20, 2015, the Office of Legal Affairs contacted Mercer, informed him that Virginia State Police does not give out officers' home addresses, and that the Office of Legal Affairs could serve Allander and Houtz. The Office of Legal Affairs also instructed Mercer not to contact the officers directly as they were being represented by the Office of the Attorney General. After this conversation Mercer again emailed Allander and Houtz asking for their home addresses so he could serve them.

Two months later, on May 14, 2015, Mercer came to the Division VII Area 10 Office and asked for Houtz and Houtz's home address. The sergeant Mercer talked to told him Houtz was not in the office and that they did not give out officers' home addresses. Mercer left, but as he left the sergeant noticed Mercer and a companion writing down the license plate numbers of the cars in the parking lot.

On May 15, 2015 at approximately 12:30 a.m. Mercer called Division VII State Police Communications, falsely identified himself as Ibrahim Fetterolf, and indicated he was meeting Allander at the Division VII Office that night. When the office contacted Allander to confirm this meeting Allander said he was not scheduled to meet with anyone that night.

3

That same night, at approximately 12:45 a.m., Trooper Wesley Paul noticed two men in a white Toyota Camry with its lights off in the employee parking lot of the Division VII, Area 9 Office. The two men were Mercer and Ibrahim Fetterolf. Paul approached the car and Mercer and Fetterolf told him they were looking for Allander. Mercer again falsely identified himself as Ibrahim Fetterolf. Paul told the men Allander was not there and asked them to leave as the hours of operation for the premises were 8:30 a.m. to 4:00 p.m. Mercer and Fetterolf complied with Paul's request and left. After this incident, on May 20, 2015, Defendant, Special Agent Vega, began to investigate the situation involving Mercer, Houtz, and Allander.

On May 29, 2015, summons were issued by the Court in Mercer's federal complaint against Houtz and Allander. The summons contained Houtz's and Allander's home addresses. Two days later, on May 31, 2015, Allander was home with his wife and children when Mercer and a male companion began ringing his doorbell and banging on his door. Allander looked outside, recognized Mercer, and opened the door to tell the men they were trespassing and to leave his property. Allander followed Mercer into the yard and to the edge of his property and then ensured Mercer's companion had also left. When Allander got back to his house his wife was upset and screaming that one of the men had thrown a brown package into the house through the front door. Not knowing what was in the package, Allander kicked it out of the house and into the yard.

The next day, on June 1, 2015, Allander was granted an Emergency Protective Order against Mercer. Two days later, on June 3, 2015, both he and Houtz sought Preliminary Protective Orders against Mercer.

The above facts were all revealed during Vega's investigation. As a result of his investigation, Vega swore out warrants against Mercer on June 1, 2015. The same day, Vega appeared before Fairfax County Magistrate Wilson Talavera where he under oath presented the results of his investigation and answered all of Magistrate Talavera's questions. Magistrate

Talavera determined the evidence supported four charges against Mercer and issued four Warrants of Arrest: one for stalking, two for identity theft, and one for using a computer to gather identifying information.

Mercer was arrested on June 6, 2015. After Mercer's arrest, and based on further investigation, Vega swore out more warrants against Mercer on June 26, 2015. Mercer's case went to trial in the Fairfax County General District Court on March 31, 2016. The prosecutor brought forward the charges for stalking and identity theft, as well as the June 26, 2015 charges. The Fairfax County Circuit Court ultimately dismissed the charges against Mercer.

Nearly three years later, on March 28, 2018, Mercer filed a Complaint with this Court alleging Vega violated his Fourth Amendment rights. The Court dismissed the Complaint for failure to state a claim, but gave Mercer leave to amend. Mercer filed an Amended Complaint with this Court on April 16, 2018 again alleging a violation of his Fourth Amendment rights to be free from an unreasonable seizure. Vega has now moved for summary judgment on Mercer's claims in the Amended Complaint.

## II. Legal Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of establishing the basis for its motion and identifying the evidence which demonstrates the absence of a genuine issue of material fact. *Id.* Once the moving party satisfies its initial burden, the opposing party may show, by means of affidavits or other verified evidence, that there exists a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In reviewing a summary judgment motion, the

court must "draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992).

### III. Analysis

Vega is not liable in this lawsuit on two independent grounds. First, Mercer's arrest was supported by probable cause so there was no Fourth Amendment violation. Second, the warrants Vega relied on were sworn out by a neutral, detached magistrate and there are no facts to support that an officer of reasonable competence would not have relied on the warrants. Therefore, even if there was a Fourth Amendment violation, the magistrate's actions shield Vega from liability.

*A. Mercer's Arrest was Supported by Probable Cause*

The Fourth Amendment protects against unreasonable searches and seizures. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). Seizure of a person without probable cause is unreasonable. *Id.* Therefore, to establish his Fourth Amendment claim, Mercer must demonstrate that his arrest lacked probable cause.

Probable cause is based on the totality of the circumstances known to the arresting officer at the time of the arrest. *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). The evidence available to the arresting officer need only be sufficient to cause a reasonable officer to believe that an offense has been or is being committed. *Id.* The evidence need not be sufficient to secure a conviction. *Id.* Therefore, "to prove an absence of probable cause, [Mercer] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude he was violating [the relevant statutes]." *Id.* at 368.

Several courts, including the Fourth Circuit in an unpublished opinion, have held an arrest based on multiple charges will be reasonable, and will not violate the Fourth Amendment, so long as at least one of the individual's charges was based in probable cause. *See Smith v. McCluskey*, 126 F. App'x 89, 95 (4th Cir. 2005) ("As the Fifth Circuit recently noted, '[i]f there was probable

cause for any of the charges made . . . then the arrest was supported by probable cause and the claim for false arrest fails.'") (Gregory, J., concurring in the judgment). *Sturdivant v. Dale*, 2016 WL 11410292, at *4 n.5 (D.S.C. May 31, 2016), *report and recommendation adopted*, 2016 WL 3514451 (D.S.C. June 28, 2016) ("For fourth-amendment purposes, an arrest on multiple charges is a 'single transaction,' and probable cause will be found to exist, so long as it existed for at least one offense."); *McMillian v. LeConey*, 2011 WL 2144628, at *8 (E.D.N.C. May 31, 2011), *aff'd*, 455 F. App'x 295 (4th Cir. 2011) ("As long as [the officer] had probable cause for some offense, the arrest was proper."); *see also Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for any of the charges made—here either disorderly conduct or resisting a search—then the *arrest* was supported by probable cause, and the claim for false arrest fails.").

In Virginia, a stalking offense is described as when

> [a]ny person, except a law-enforcement officer, . . . and a registered private investigator, . . . acting in the course of his legitimate business, who on more than one occasion engages in conduct directed at another person with the intent to place, or when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person or to that other person's family or household member is guilty of a Class 1 misdemeanor. If the person contacts or follows or attempts to contact or follow the person at whom the conduct is directed after being given actual notice that the person does not want to be contacted or followed, such actions shall be prima facie evidence that the person intended to place that other person, or reasonably should have known that the other person was placed, in reasonable fear of death, criminal sexual assault, or bodily injury to himself or a family or household member.

VA. CODE § 18.2-60.3(A).

The facts Vega uncovered in his investigation were undoubtedly sufficient evidence for a reasonable officer to conclude a stalking offense was being committed. The evidence showed Mercer had been violent with Houtz before and Allander had knowledge of this violence. After

7

Mercer's clear displeasure with his initial 2006 arrest, Mercer began doggedly pursuing Houtz and Allander again nearly nine years later in 2015. This involved emailing them, calling their workplaces, showing up to their workplaces during business hours, showing up to Allander's workplace after midnight, lying about his identity in attempts to gain access to Houtz and Allander, continuing to insist that he be given Houtz's and Allander's home addresses, and eventually showing up to Allander's home with a companion and throwing a brown package through Allander's front door.

Mercer took these actions despite being told multiple times to stop and that Houtz's and Allander's home addresses would not be shared. Mercer knew or should have known that given his history with Houtz and Allander, this aggressive pursuit of them and attempts to find their homes would have put Houtz and Allander in reasonable fear of bodily injury for themselves and – since Mercer and his companion threw an unidentified package into Allander's home while Allander's wife and children were inside – their family members.

Because there was probable cause to support an arrest on the stalking charge, and because the Fourth Amendment only requires one charge to be supported by probable cause,[1] Mercer's arrest did not violate the Fourth Amendment.

*B. Mercer's Arrest Warrant was Issued by a Neutral and Detached Magistrate*

Even if Vega did not have probable cause to arrest Mercer he still would not be liable because of the actions of Magistrate Talavera. This is because "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). If the magistrate issues a warrant the officer will only be held liable if "no officer of reasonable competence would have requested

---

[1] Because the analysis may end after determining there was probable cause to support the stalking charge, this Court does not reach the merits of probable cause on the other charges.

the warrant." *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986). No officer of reasonable competence would rely on a warrant that was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984).

Because Magistrate Talavera signed the warrants, Vega is entitled to a presumption that those warrants were reasonable. Mercer has produced no evidence to counter that presumption, much less to demonstrate that the warrants were so defective that no officer of reasonable competence would have relied on them. Thus, even if there was no probable cause for Vega to arrest Mercer, Vega still would not be liable because he relied on valid warrants issued by a neutral and detached magistrate.

## IV. Conclusion

For the above reasons, there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment, Dkt. 19, is **GRANTED**. The trial scheduled to begin June 25, 2019 is cancelled. Judgment shall issue through a separate order.

It is **SO ORDERED.**

April 24, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge